# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 13, 2013

## STATE OF TENNESSEE v. CLEO D. GADSON

**Appeal from the Circuit Court for Montgomery County**
**No. 41100435     John H. Gasaway, Judge**

---

**No. M2012-01521-CCA-R3-CD - Filed February 14, 2013**

---

The Defendant, Cleo D. Gadson, entered a best interest guilty plea to attempted second degree murder, agreeing to allow the trial court to determine his sentence. After a sentencing hearing, the trial court sentenced the Defendant to nine years, to be served at 30%. On appeal, the Defendant contends that the trial court erred when it sentenced him because it improperly considered written statements of persons other than the victim. He further contends that the manner of the service of his sentence is excessive. After a thorough review of the record and applicable authorities, we conclude that there is no error. We, therefore, affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and JEFFREY S. BIVINS, JJ., joined.

Michael T. Pugh, Clarksville, Tennessee, for the appellant, Cleo D. Gadson.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Kimberly Lund, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

#### A. Guilty Plea

1

This case arises from the Defendant's shooting the victim, a seventeen-year-old girl, in the face, leaving her paralyzed on the left side of her body and, from the waist down, on both sides of her body. In relation to this shooting, a Montgomery County grand jury indicted the Defendant for attempted second degree murder, two counts of aggravated assault, and possession of a firearm during the commission of a dangerous felony. The Defendant entered a "best interest" guilty plea to the offense of attempted second degree murder. At the guilty plea submission hearing, the State informed the trial court that, had the case gone to trial:

> The bulk of the State's case would come primarily from the testimony of Naosha (phonetic spelling) Johnson, who is now 17 – or approximately 17. She would testify that back on September 10th[,] 2010[,] she and the Defendant, along with two others, were hanging out at a house here in Montgomery County in a room together.
>
> She would testify that she was sitting on a bed listening to music, they were chatting amongst themselves. [The Defendant] had a Glock nine millimeter that he was playing with, for lack of a better word, racking the slide. A discussion ensued about someone that Ms. Johnson had perhaps had a sexual encounter with. [The Defendant] wanted to know if he could do the same with her; she replied no. Ms. Johnson would then testify that [the Defendant] approached her, put the gun in her face, that the discussion continued and she ran her mouth, she says, because [s]he was not afraid of him, that angered him and the last thing she remembers is being shot in the head. Ms. Johnson has – she is paralyzed from the waist down and completely paralyzed on the left side of her body.
>
> After the shooting the Defendant and the two other individuals in the room fled out the window from the bedroom leaving the victim laying there. The gun was tossed; it was later recovered and matched having fired the bullet that struck Ms. Johnson. The Defendant did not make any statement at all.

The trial court clarified that the parties had reached a plea agreement, one in which the Defendant was pleading guilty because, all things considered, he believed it was in his best interest. The trial court agreed that, pursuant to the agreement, it would hold a sentencing hearing to determine the length and manner of service of the Defendant's sentence. The statutory range of punishment was eight to twelve years, but the State agreed, as part of the plea agreement, to a punishment range of eight to ten years.

2

The Defendant agreed that the factual basis for his conviction, as provided by the State, was true. The trial court went over each of the rights the Defendant was waiving by pleading guilty, and the Defendant acknowledged that he understood his decision. The trial court accepted the Defendant's plea.

## B. Sentencing

At the beginning of the sentencing hearing, the trial court stated that the plea agreement contemplated that the Defendant would be sentenced as a Range I offender to a term between eight and ten years. The State offered the presentence report, and the Defendant objected. The Defendant noted that the presentence report contained three or four statements from parties other than the victim, which he argued contravened the relevant sentencing statute, Tennessee Code Annotated section 40-35-207. The trial court noted the objection, and the State offered no additional evidence.

The Defendant testified that, at the time of his arrest, he was living with his mother and his grandmother. He said that, on the day of this shooting, he was eighteen years old. He said he awoke at around noon when some friends called to invite him to their house to play video games. Later that evening, he was in a room at the friend's house with three people "chillin, smoking weed," and listening to music on his laptop. The Defendant said that the slide on his gun, which was on his person, "pinched" him, so he took the gun out and placed it under a pillow.

The Defendant said that his friends asked to see the gun, and the Defendant refused. After their repeated requests, he took the gun out and removed the clip. He said that he believed that there was also no bullet in the chamber. The Defendant allowed his friends to look at the gun but then he took it back. He said that he popped the clip back into the gun. The Defendant recalled that he pushed a piece on the side of the gun to "make the gun steady," and the gun "went off."

The Defendant said that he and the victim had not been arguing that night and that the shooting was not intentional. He explained that he ran because he panicked, knowing he would be in trouble for having a gun in the house at all. After a week, the Defendant turned himself in to the police.

During cross-examination, the Defendant testified that he jumped out a window after the gun fired. At that time, he did not know whether he had shot the victim, and he did not stop to check. The Defendant said he threw the gun after he jumped out of the window. He said he was worried about the victim, but he conceded that he never checked on her.

3

Upon questioning from the trial court, the Defendant said the victim was lying when she said that the two had an argument before the shooting. The Defendant informed the trial court that the victim's mother and his mother were good friends and that their families spent the holidays together. He said he had no reason to shoot her.

The trial court then sentenced the Defendant, finding:

[The Defendant] has been convicted upon his best interest plea of guilty of criminal attempt to commit second degree murder, which is a B felony. He is a range one standard offender. The range of punishment for the offense is eight to 12 years, however, there was an agreement announced at the time he entered his plea that the sentence range for the Court today would be eight to ten years rather than eight to 12 years.

The Court has considered the testimony . . . or the evidence which has been received today; the Court has reviewed the presentence report and the attached victim impact statements made by persons the [C]ourt believes are contemplated by 40-35-207[(A)(8)]; the Court has considered the principl[e]s of sentencing and arguments as to sentencing alternatives; the Court has considered the nature and characteristics of the criminal conduct involved, however, the nature and characteristics of the criminal conduct involved are disputed. On one hand [the Defendant] paints a picture of being in the company of [the victim] and two other people, that one of the other people saw a weapon, inquired about it; he took the magazine out of it, they looked it over, he took it back from him, put the magazine in and, according t[o] him, the slide engaged and a shot rang out and she was accidently hit in the head. I mean, if his version of [the] events is completely accurate, then it was either a reckless or a negligent act on his part that gave rise to her injury.

On the other hand, her version of [the] events is entirely different. I say entirely, there's some similarities. She agrees they were listening to music and the . . . boys were smoking marijuana, and the conversation ensued between herself . . . and [the Defendant] having to do with a sex act, which gave rise to him getting angry, and according to what [the State's attorney] said that [the victim] said he had a gun in his hand and to hear her tell it he shot her in the head.

Now, those two versions can't be reconciled not without more. So as far as what the Court finds that the nature and characteristics of the criminal conduct involved are the Court is required to make a finding based on a

preponderance of the evidence. Since he has entered a plea of guilty to attempt to commit second degree murder . . . the Court accredits her version of events rather than his.

As far as the evidence and the information regarding mitigating and enhanc[ement] factors, under 40-35-[1]13 the Court finds that under subsection ten that [the Defendant] had no hesitation about committing a crime when the risk to human life was high. Also, under subsection six the Court finds that the personal injury inflicted upon [the victim] was particularly great.

As to mitigating circumstances the Court finds under 40-35-113 [sic] . . . the Court rejects the contention . . . that the Court should find under subsection six that his youth caused him to . . . lack substantial judgment in committing the offense. . . . [E]ither version of events does not demonstrate that his youth had anything to do with his judgment.

Under subpart 11, the Court rejects subpart 11 but under subpart 13 the Court does find in mitigation that he entered this plea, and that that eliminated the necessity to have a jury trial and the associated time, effort and expense.

With regard to whether he should be placed in a release status or whether he should be confined, the Court finds that confinement is necessary to avoid depreciating the seriousness of the offense. The Court also finds that confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses. The [C]ourt agrees with [the State's attorney's] statement that [the Defendant] needs to understand and others need to know that such conduct that results in this type of injury is going to get you a trip to the penitentiary.

The [C]ourt fixes his actual sentence at nine years, and orders him to satisfy it in confinement at the Department of Correction.

It is from this judgment that the Defendant now appeals.

## II. Analysis

The Defendant contends that the trial court erred when it sentenced him. He first contends that the trial court improperly considered the written statements of persons other than the victim. He next asserts that the manner of the service of his sentence is excessive. The State counters that the trial court properly sentenced the Defendant to a term of nine

years and did not err when it denied the Defendant an alternative sentence.  We agree with the State.

The Tennessee Criminal Sentencing Reform Act of 1989 and its amendments describe the process for determining the appropriate length of a defendant's sentence.  Under the Act, a trial court may impose a sentence within the applicable range as long as the imposed sentence is consistent with the Act's purposes and principles.  T.C.A. § 40-35-210(c)(2), (d) (2010); *see State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008).  In 2005, the Tennessee General Assembly amended the sentencing law in order to bring Tennessee's sentencing scheme into compliance with United States Supreme Court rulings on the subject.  *See United States v. Booker*, 543 U.S. 220 (2005); *Blakely v. Washington*, 542 U.S. 296 (2004).  As a result, of the 2005 amendments to the Sentencing Act, which deleted a claim that the trial court did not properly weigh enhancement and mitigating factors as a ground for appeal, the appellate courts were "left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence." *Carter*, 254 S.W.3d at 345-46.

Appellate review of sentences has been *de novo* with a presumption of correctness. *See* T.C.A. § 40-35-401(d) (2010).  In a recent decision, the Tennessee Supreme Court reviewed changes in sentencing law and the impact on appellate review of sentencing decisions.  *State v. Susan Renee Bise*, 380 S.W.3d 682 (Tenn. 2012).  The Tennessee Supreme Court announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'"  *Id.* at 708; *State v. Christine Caudle*, __ S.W.3d __, No. M2010-01172-SC-R11-CD, 2012 WL 5907374, at *5 (Tenn. Nov. 27, 2012) (explicitly applying the same standard to questions related to probation or any other alternative sentence).

A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'"  *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).  To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision.  *Id*.; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980).

The "presumption of reasonableness" applied to sentences imposed by trial courts "'reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case.'"  *Bise*, 380 S.W.3d at 703 (quoting *Rita v. United States*, 551 U.S. 338, 341 (2007)).  A presumption of

reasonableness "simply recognizes the real-world circumstance that when the judge's discretionary decision accords with the [Sentencing] Commission's view of the appropriate application of [sentencing purposes] in the mine run of cases, it is probable that the sentence is reasonable." *Rita*, 551 U.S. at 350-51.

In conducting its review, this Court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* T.C.A. §§ 40-35-102, -103, -210 (2010); *see also Bise*, 380 S.W.3d at 697-98. The burden is on the appellant to demonstrate the impropriety of his sentence. *See* T.C.A. § 40-35-401, Sentencing Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c).

## A. Victim Impact Statements

The Defendant contends that the trial court erred when it considered the victim impact statements contained in the presentence report. He asserts that Tennessee Code Annotated section 40-35-207(a)(8) permits the introduction only of a statement from the victim or the investigative agency. As such, the Defendant asserts that the trial court's consideration of any other statements in the presentence report was in error. The State counters that the record does not show that the trial court considered the statements to which the Defendant objected. The State quotes the trial court as stating, "To the extent that [the other statements] don't comply with 40-35-207[(a)(8)], the court will grant the motion, otherwise, the

presentence report is received into evidence and marked as exhibit one to this proceeding." Further, the State notes that the trial court later stated when sentencing the Defendant, that it had considered "the attached victim impact statements made by persons the [C]ourt believes are contemplated by 40-35-207[(a)(8)]." Therefore, the State asserts that there is no evidence that the trial court wrongfully considered the other statements. Further, even if it had, the State asserts it would not amount to an abuse of discretion.

We conclude that there is no proof that the trial court considered statements other than the victim's statement. When sentencing the Defendant, the trial court mentioned only the Defendant's testimony and the victim's statement of the incident. It found two enhancement factors applicable, factor (6) that the personal injury inflicted upon the victim was particularly great and (10) that the Defendant had no hesitation about committing a crime when the risk to human life was high. At the guilty plea hearing, the State offered the factual basis to support the Defendant's conviction, facts to which the Defendant agreed, and those facts included that the victim suffered extensive paralysis as a result of the gunshot wound to her head. Those facts also included that when the Defendant fired the gun at the victim, there were two other persons present in the room where the shooting occurred. The trial court applied both of these enhancement factors based upon the victim's version of the events, finding her version more credible in light of the Defendant's guilty plea to attempted second degree murder. We cannot find in the record any evidence that the trial court based its sentencing findings on any witness statements other than the victim's impact statement. We also note that reliable hearsay is admissible evidence in a sentencing hearing and that Tennessee Code Annotated section 40-35-207(a)(5) provides that the presentence report should contain "[i]nformation relating to any enhancement or mitigating factors that may affect the sentence imposed . . . ." Accordingly, we conclude that the trial court did not err in this regard, and the Defendant is not entitled to relief on this issue.

## B. Alternative Sentence

The Defendant next contends that the trial court erred when it denied him an alternative sentence. He asserts that there was insufficient proof of a need for deterrence presented at the sentencing hearing and, thus, the trial court should have granted him an alternative sentence. The State counters that, while the Defendant is correct that there was no evidence of a need for deterrence presented at trial, the trial court also considered other relevant factors when it denied the Defendant an alternative sentence and, therefore, properly denied him an alternative sentence.

Regarding alternative sentencing, the Tennessee Supreme Court noted that, due to the 2005 sentencing amendments, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347, (Tenn. 2008) (citing

T.C.A.§ 40-35-102(6) (2006)).   Instead, a defendant not within "the parameters of subdivision (5) [of T.C.A. § 40-35-102], and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." *Id.* (footnote omitted).  Generally, defendants classified as Range II or Range III offenders are not to be considered as favorable candidates for alternative sentencing. T.C.A. § 40-35-102(6) (2010).  Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall *consider*" them.  T.C.A.§ 40-35-102(6) (emphasis added).

In addition to the aforementioned sentencing considerations, when considering an alternative sentence, the trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed.  T.C.A. § 40-35-103 (2010).

When sentencing the defendant to confinement, a trial court should consider whether:

(A)  Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B)  Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C)  Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103.

The Defendant in this case pled guilty to attempted second degree murder, a Class B felony.  As such, he is not considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. *Carter*, 254 S.W.3d at 347.  He was still, however, eligible for an alternative sentence because his sentence was ten years or less and he was not convicted of one of the enumerated offenses the sentences that are not probatable. *See* T.C.A. § 40-35-303 (2010). When a defendant is eligible for an alternative sentence, but not considered a favorable candidate, the trial court shall automatically consider probation as a sentencing alternative; however, the defendant bears the burden of proving his or her suitability for probation.   T.C.A. § 40-35-303(b).   In addition, "the defendant is not automatically entitled to probation as a matter of law."  T.C.A. § 40-35-303(b), Sentencing Comm'n Comments.  Rather, the defendant must demonstrate that probation would serve "the ends of justice and the best interests of both the public and the defendant." *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted).

In the case under submission, when the trial court rejected an alternative sentence, it stated:

> With regard to whether he should be placed in a release status or whether he should be confined, the Court finds that confinement is necessary to avoid depreciating the seriousness of the offense. The Court also finds that confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses. The court agrees with [the State's attorney's] statement that [the Defendant] needs to understand and others need to know that such conduct that results in this type of injury is going to get you a trip to the penitentiary.

Having reviewed the record, we conclude that there is nothing in the record to suggest that the trial court abused its discretion by denying the Defendant an alternative sentence. The trial court sentenced the Defendant to the midpoint of the sentencing range agreed to in the plea agreement, which is only one year above the minimum sentence for that offense. The trial court also thoroughly considered the principles and purposes of the Criminal Sentencing Reform Act. It concluded that confinement was necessary to avoid depreciating the seriousness of this offense. The trial court accredited the victim's account of the events leading to the shooting. According to that account, the victim and the Defendant were socializing with some friends listening to music when the conversation became of a sexual nature. The Defendant asked the victim if she would engage in a sex act with him, and she refused. He brandished a weapon, approached her, and she, being unafraid of the Defendant, still "ran her mouth." The Defendant shot the weapon at her head, causing injury to the victim that resulted in extensive paralysis. The Defendant fled out of a bedroom window, threw his weapon, and evaded apprehension for more than a week, until he ultimately turned himself in to police. The Defendant offered his own testimony at sentencing that the victim lied about the sexual nature of the conversation and about him pointing a gun at her. He said, rather, he fired the gun accidentally and fled before he knew that he had shot the victim. The trial court accredited the victim's version of events, and the Defendant did not demonstrate that, in light of these facts, an alternative sentence would serve the ends of justice and the best interests of both the public and the Defendant. *See Souder*, 105 S.W.3d at 607. The Defendant is not entitled to relief on this issue.

### III. Conclusion

Based upon the foregoing authorities and reasoning, we conclude that the trial court did not err when it sentenced the Defendant. As such, the trial court's judgment is affirmed.

10

_____
ROBERT W. WEDEMEYER, JUDGE